**Leon W. KNIGHT et al., Petitioners,**

v.

**The Honorable Donald D. ALSOP, District Judge, United States District Court for the District of Minnesota, Respondent.**

**No. 76–1051.**

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1976.

Decided May 17, 1976.

Edwin Vieira, Jr., National Right to Work Legal Defense Foundation, Inc., Fairfax, Va., for petitioners; William E. Mullin, Minneapolis, Minn., of counsel.

Eric R. Miller, St. Paul, Minn., and Richard G. Mark, Asst. Sol. Gen., St. Paul, Minn., for respondent.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for employee organizations and officers.

Before LAY, ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

The critical issue raised in this case is whether a three-judge court should have been convened under 28 U.S.C. §§ 2281 and 2284. Petitioners request a writ of manda-

mus pursuant to 28 U.S.C. § 1651 and Fed. R.App.P. 21 directing the district court [1] to convene a three-judge court. For the reasons stated below, we conclude that the district court exceeded its jurisdiction in denying petitioners' motion to convene a three-judge court and grant the petition for writ of mandamus.

Twenty faculty members (petitioners) employed by various Minnesota community colleges initiated this action contending that the Minnesota Public Employee Labor Relations Act (PELRA), Minn.Stat.Ann. § 179.61 *et seq.,* contravenes the United States Constitution and 42 U.S.C. §§ 1983, 1985(3), 1986 and 1994. In particular, the petitioners assert that the exclusive representation [2] and fair share [3] provisions of the PELRA, on their face and as applied, are violative of the First, Ninth, Tenth, Thirteenth and Fourteenth Amendments. The amended complaint named as defendants, respondents, the Minnesota Community College Faculty Association (MCCFA), an employee organization certified as the exclusive representative of petitioners under the PELRA; its affiliates, the National Education Association (NEA), the Minnesota Education Association (MEA) and the Independent Minnesota Political Action Committee for Education (IMPACE); various officers and former officers of the unions; and officials of the state of Minnesota who administer the PELRA.

None of the petitioners is either a member or supporter of the unions nor desires any representation by them. Ostensibly, the MCCFA through the PELRA has the authority to act as the petitioners' exclusive representative in collective bargaining with the Minnesota State Board for Community Colleges (Board) concerning terms and conditions of employment in the community college system. Essentially, the petitioners allege that the PERLA denies the right to bargain with the Board on an individual level and prohibits an individual from petitioning the Board with regard to employment matters.

Furthermore, during the academic years 1973–1974, 1974–1975, and 1975–1976, the MCCFA apparently has caused fair share fees to be deducted by the Board from the petitioners' wages in amounts equal to 94–97% of the formal membership dues levied by the MCCFA during those years. The petitioners in this regard further contend that such fees have been deducted or checked off without notice or hearing and without a determination that expenditure of the fees confers any benefit on the petitioners. It is also asserted that some of the fees have been transferred by the MCCFA to the NEA, the MEA and IMPACE.

■ The amended complaint requested a declaration that the exclusive representation and fair share schemes are constitutionally invalid and injunctive relief restraining the unions and state officials from enforcing the applicable provisions of the PELRA. In their amended complaint, the petitioners also requested that a three-judge court be convened pursuant to 28 U.S.C. §§ 2281 and 2284. On December 22, 1975, after oral argument the district court issued a memorandum opinion and order denying the motion for a three-judge court. The district court held that the petitioners' allegations concerning the exclusive representation aspect of the PELRA failed to constitute a substantial federal constitutional question.[4] Although the petitioners'

---

1. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

2. Minn.Stat.Ann. §§ 179.63(1)–(7), (15)–(18); 179.64(7); 179.65(1)–(2), (4)–(5), (7); 179.66(2), (7)–(10); 179.67; 179.68(1), (2), (5)–(6), (9), (11); 179.69; 179.70; 179.71(2)–(4), (5), (6)–(7); 179.72(3), (6)–(7), (9), (12); 179.74(3)–(5).

3. Minn.Stat.Ann. § 179.65(2).

4. On a motion to convene a three-judge court, a single district judge may determine whether the constitutional question is substantial, whether the complaint formally alleges a basis for equitable relief, and whether the case otherwise comports with the requirements for a statutory three-judge court. *See Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 715 (1962). A single judge may also determine whether there is a statutory claim that is dispositive of the case. *See Hagans v. Lavine,* 415

contention surrounding the fair share fee was found to present a substantial constitutional question, the district court determined that injunctive relief against state officials was not necessary with respect to that claim.

A threshold consideration is whether the district court's refusal to convene a three-judge court is reviewable through a petition for writ of mandamus.[5] The remedy of mandamus is typically available only in circumstances in which the district court exceeds "the sphere of its discretionary power." *Will v. United States,* 389 U.S. 90, 104, 88 S.Ct. 269, 278, 19 L.Ed.2d 305, 315 (1967). *See In re Cessna Aircraft Antitrust Litigation,* 518 F.2d 213, 216–17 (8th Cir.), *cert. denied,* 423 U.S. 947, 96 S.Ct. 363, 46 L.Ed.2d 282 (1975); *Pfizer, Inc. v. Lord,* 456 F.2d 545, 547–48 (8th Cir. 1972). The writ is an extraordinary remedy that is to be granted when the lower court has committed a "clear abuse of discretion." *Schlagenhauf v. Holder,* 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152, 159 (1964). *See Pfizer, Inc. v. Lord,* 522 F.2d 612, 614–15 (8th Cir. 1975). Despite the limited availability of the mandamus remedy, we conclude that the ruling of the district court is reviewable through mandamus. In *Gonzalez v. Automatic Employees Credit Union,* 419 U.S. 90, 100 n. 19, 95 S.Ct. 289, 295, 42 L.Ed.2d 249, 258 (1974), the Supreme Court clearly indicated that "Where a single judge refuses to request the convention of a three-judge court, but retains jurisdiction, review of his refusal may be had in the court of appeals * * * through petition for writ of mandamus * * *." *See Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794, 796 (1962); *see also Schackman v. Arnebergh,* 387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865 (1967). In this particular instance, judicial economy can be served by exercising the "supervisory control of the District Courts * * * necessary to proper judicial administration in the federal system." *La Buy v. Howes Leather Co.,* 352 U.S. 249, 259–60, 77 S.Ct. 309, 315, 1 L.Ed.2d 290, 299 (1957). *See* J. Moore & B. Ward, 9 Moore's Federal Practice ¶ 110.-28, at 312–13 (1975 & Supp.). The writ of mandamus is an appropriate method "to confine [the district court] to a lawful exercise of its prescribed jurisdiction." *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185, 1190 (1943).

Accordingly, we must proceed to determine whether the district court acted in excess of its jurisdiction or committed a clear abuse of discretion in refusing to convene a three-judge court under the circumstances of the instant case.

The district court, relying on *Railway Employees' Dep't v. Hanson,* 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), concluded that the petitioners' constitutional claims concerning the exclusive representation scheme failed to present a substantial federal constitutional question. We, however, disagree with its holding that *Hanson* rendered petitioners' claims wholly insubstantial.

It is well established that a three-judge court need not be convened when the issues presented have been settled beyond question. The Supreme Court in *Bailey v. Patterson,* 369 U.S. 31, 33, 82 S.Ct. 549, 551, 7 L.Ed.2d 512, 514 (1962), has expressly stated that 28 U.S.C. § 2281 "does not require a three-judge court when the claim that a statute is unconstitutional is wholly insubstantial, legally speaking nonexistent." Moreover, in *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36, 42 (1973), the Court equated "constitutional insubstantiality" with such concepts as "essentially fictitious," "wholly insubstantial," "obviously frivolous," and "obviously without merit." The Supreme Court concluded:

---

U.S. 528, 543–44, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577, 591 (1974).

**5.** Since the district court retained jurisdiction, this is not a case arising from an appealable order. *Cf. Majuri v. United States,* 431 F.2d

469, 472 (3d Cir.), *cert. denied,* 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 248 (1970). Further, petitioners did not request certification for appeal under 28 U.S.C. § 1292(b) of the district court's order.

The limiting words "wholly" and "obviously" have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281. A claim is insubstantial only if " 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' "

*Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 859, 35 L.Ed.2d 36, 42 (1973), *quoting from Ex parte Poresky,* 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152, 153 (1933). *See also Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, 105–06, 53 S.Ct. 549, 550, 77 L.Ed. 1062, 1064 (1933); *Hannis Distilling Co v. Baltimore,* 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482, 483 (1910); *McGilvra v. Ross,* 215 U.S. 70, 80, 30 S.Ct. 27, 31, 54 L.Ed. 95, 101 (1909). Under the test announced in *Goosby v. Osser, supra,* we conclude that *Hanson* is not a prior decision of the Supreme Court that "foreclose[s] the subject" of petitioners' constitutional attack upon the Minnesota exclusive representation scheme. Similarly, it is not a decision that "leave[s] no room for the inference that the questions sought to be raised [by petitioners] can be the subject of controversy."

In *Railway Employees' Dep't v. Hanson,* 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), the Supreme Court confirmed the validity of union shop agreements negotiated according to congressional authorization in the Railway Labor Act of 1926 (RLA), 45 U.S.C. §§ 151–63, against challenges grounded on the First and Fifth Amendments. Under the RLA, union shop agreements could condition union membership on the payment of "periodic dues, initiation fees, and assessments." 45 U.S.C. § 152, Eleventh. The Supreme Court held that such a condition, on its face, neither denied union employees of their right to work as ensured by the due process clause of the Fifth Amendment nor interfered with their right of free speech or freedom of association as secured by the First Amendment. *Id.* at 227–38, 76 S.Ct. at 715–721, 100 L.Ed. at 1128–1134. In so holding, however, the Court predicted:

> [I]f the exaction of dues, initiation fees, or assessments is used as a cover for forcing ideological conformity or other action in contravention of the First Amendment, this judgment will not prejudice the decision in that case. \* \* \* We only hold that the requirement for financial support of the collective-bargaining agency by all who receive the benefits of its work \* \* \* does not violate either the First or the Fifth Amendments.

351 U.S. at 238, 76 S.Ct. at 721, 100 L.Ed. at 1134. The Supreme Court in *Hanson* emphasized that it was approving exclusively union shop agreements which condition union membership on the payment of union dues, fees and assessments utilized to defray the costs of collective bargaining. *Id.*

 The petitioners' constitutional challenge to the exclusive representation scheme of the PELRA is distinct from *Hanson.* The essence of petitioners' allegation [6] concerning exclusive representation relates to their unwillingness to accept a union organization as their sole bargaining representative for the purpose of negotiating and administering collective agreements with the Minnesota Community Faculty Association. Correspondingly, the petitioners contend that the PELRA prohibits an individual from petitioning the Minnesota State Board for Community Colleges with regard to employment conditions. In contrast, the Supreme Court in *Hanson* was confronted with an attack on the RLA, which allows

---

**6.** The existence of a substantial constitutional question is determined by the contentions of the complaint, and the allegations of the complaint are assumed true. *Boddie v. Connecticut,* 401 U.S. 371, 373, 91 S.Ct. 780, 783, 28 L.Ed.2d 113, 116 (1971).

for exclusive representation similar to that of the PELRA, but it did not resolve the validity of such a scheme. *See* 45 U.S.C. § 152, Fourth. Furthermore, the Court's decision in *Hanson* was rendered in a private rather than public sector collective bargaining context. Collective bargaining in public employment has been considered different from collective bargaining in private employment.[7] *See Winston-Salem/Forsyth County Unit v. Phillips,* 381 F.Supp. 644, 647 (M.D.N.C.1974). *See Generally* Blair, *Union Security Agreements in Public Employment,* 60 Cornell L.Rev. 183 (1975); Summers, *Public Employee Bargaining: A Political Perspective,* 83 Yale L.J. 1156 (1974).[8]

We conclude that the district court acted beyond its jurisdiction in denying petitioners' motion to convene a three-judge court under 28 U.S.C. § 2281. *Hanson* does not "foreclose the subject" of petitioners' challenge to the exclusive representation scheme of the PELRA. There is "room for the inference that the questions sought to be raised [by petitioners] can be the subject of controversy." *Goosby v. Osser, supra,* 409 U.S. at 518, 93 S.Ct. at 859, 35 L.Ed.2d at 42. We, of course, neither decide not express any view on the merits of this case.

In summary, we are satisfied that all formal requirements for a three-judge court which are determinable by a single judge exist with regard to the exclusive representation scheme of the PELRA.[9] Since it has been determined that a substantial federal constitutional question has been presented and that a three-judge court

should be convened, it is unnecessary to reach the remaining question of whether the complaint formally alleges a basis for equitable relief with respect to the fair share provision of the PELRA. The petitioners' allegation concerning the fair share provision may be considered by the three-judge court as a pendent claim.[10]

The petition for writ of mandamus to compel the convention of a three-judge court is granted.

---

7. The district court recognized but rejected the distinction between public and private collective bargaining.

8. We note that the Supreme Court has granted review in a case involving a constitutional challenge to the validity of a Michigan public collective bargaining statute. *See Abood v. Detroit Board of Education,* 60 Mich.App. 92, 230 N.W.2d 322 (1975), *prob. juris. noted,* —— U.S. ——, 96 S.Ct. 1723, 48 L.Ed.2d 192, 44 U.S.L.W. 3603, 3608, (U.S. April 27, 1976).

9. Although the district court did not reach the issue of whether the complaint formally alleges a basis for equitable relief with regard to the

exclusive representation scheme, we have necessarily decided the question in the affirmative.

10. Following the district court's order of December 22, 1975, the Minnesota Supreme Court held that the fair share provision of the PELRA was not violative of due process. *See Robbinsdale Education Ass'n v. Robbinsdale Federation of Teachers, Local 872,* 239 N.W.2d 437 (Minn. 1976). On March 31, 1976, the Minnesota Legislature enacted Minn.H.F. No. 2244, *amending* Minn.Stat.Ann. § 179.65(2), which significantly alters the manner in which fair share fees are assessed and possibly renders this claim moot.